IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ERIC KELLER, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) |
| v. | ) |
| | ) |
| TRUIST BANK and | ) |
| EQUIFAX INFORMATION | ) |
| SERVICES, LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

1. This is an action for damages brought by consumer, Eric Keller, against Defendants for violations of the Fair Credit Reporting Act (hereinafter the "FCRA"), 15 U.S.C. §§ 1681, *et seq.* and the North Carolina Consumer Credit and Protection Act.

## THE PARTIES

2. Plaintiff Eric Keller is an adult individual who is a resident of West Virginia; however, during the time of the relevant transaction, he was working in the state of North Carolina as a travel nurse.

3. Defendant Truist Bank, (hereafter "Truist" or "Truist Bank") is a bank that regularly conducts business in the Middle District of North Carolina and that has a principal place of business in North Carolina.

4. (a) Defendant Equifax Information Services, LLC (hereafter "Equifax") is a corporation registered to do business in North Carolina with its principal office in Georgia.

(b) Defendant Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15

1

U.S.C. § 1681a(d), to third parties.

(c) Equifax disburses such consumer reports to third parties under contract for monetary compensation.

**JURISDICTION & VENUE**

5. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

**FACTUAL ALLEGATIONS**

7. In or about March of 2021, the Plaintiff purchased a 2021 Toyota 4 Runner and financed the vehicle through TD Auto Finance.

8. In or about December of 2021, the Plaintiff refinanced the subject vehicle through Defendant Truist.

9. Truist sent a payoff check to TD Auto for the original loan.

10. Thereafter, upon information and belief, Truist sent another payoff check to TD Auto for the original loan.

11. TD Auto, upon realizing that it had been paid twice for the same loan, refunded the amount of one of the payoff checks to Truist bank.

12. Truist Bank then mistakenly credited the money to Plaintiff's account with Truist and listed the car as paid off.

13. Truist released the title to the vehicle back to Plaintiff.

14. Plaintiff made numerous attempts thereafter to make payments on the loan, but Truist refused to take Plaintiff's payments on the basis that, according to Defendant Truist,

2

Plaintiff's loan was "paid off."

15. Plaintiff was unable to get Truist to accept a payment at any time.

16. Thereafter, on or about August of 2022, Defendant Truist realized it had made a mistake and reopened Plaintiff's account.

17. Defendant Truist billed the Plaintiff for $5,202.05 as the current amount due, which represented all the payments up to that point plus, upon information and belief, numerous late fees and significant interest.

18. Defendant Truist reported to the credit reporting agencies that Plaintiff was delinquent on his loan in February 2022 through August 2022.

19. This was false and inaccurate.

20. Plaintiff was barred from making any payments because Truist had labeled the account as paid off.

21. Plaintiff was not willfully refusing to pay a just debt.

22. Plaintiff made attempts to contact the Defendant to get the amount corrected, but Defendant refused to help the Plaintiff.

23. The Defendant Truist continued to report on Plaintiff's credit report that he was several months in arrears.

24. This reporting was false due to the delinquency being entirely Truist Bank's mistake.

25. This reporting failed to acknowledge that Truist did not allow Plaintiff to make payments, even though he tried multiple times.

26. Instead of recognizing its error, Truist opted to ruin the Plaintiff's credit and

3

demand an outrageous lump-sum payment in the month of August 2022.

27. In or about October or November of 2022, Truist's agent Jamie informed the Plaintiff that they would not fix his credit until he signed a "new contract" so Truist could send his loan to a third-party company, not Truist.

28. Defendant was unfairly holding Plaintiff's credit hostage to force him into a new contract instead of honoring the existing deal.

29. Plaintiff refused to sign the new agreement, and Truist continued to report the incorrect information on Plaintiff's credit, true to their threat.

30. The Defendant thereafter began sending letters to Plaintiff threatening repossession.

31. Plaintiff decided to retain counsel.

32. On January 10, 2023, the undersigned counsel sent a certified letter, return receipt requested, to Truist Bank advising the bank that the Plaintiff had retained counsel and to direct all further communications to his attorney, the undersigned counsel.

33. The Plaintiff's letter, by counsel, also requested a copy of all the loan files for Plaintiff's file.

34. The Defendant ignored that letter and never contacted Plaintiff's counsel.

35. Instead, the Defendant continued to contact the Plaintiff himself by telephone and letter.

36. Further, the Defendant began charging the Plaintiff late fees on the 15th of every month for a loan that was not actually delinquent but was listed as such as a result of the Defendant's negligence and breach of contract.

37. Plaintiff then mailed, by counsel and by certified mail return receipt requested, a credit report dispute letter to Defendant Equifax.

38. Upon information and belief, it is common practice for Equifax to use outside companies to assist with the mailing of letters and reading of communications.

39. Upon information and belief, Equifax relayed the credit report dispute to Truist Bank, as is standard practice in the credit reporting business and is required by contract.

40. Defendant Truist Bank verified the accuracy of the credit reporting to Equifax on January 20, 2023, thus locking in the damage to Plaintiff's credit.

41. Truist never contacted Plaintiff regarding his dispute.

42. Upon information and belief, Truist did not conduct any investigation into Plaintiff's dispute other than to verify his account information.

43. Upon information and belief, Truist did not reasonably investigate Plaintiff's dispute.

44. Defendant Equifax then mailed a letter to the Plaintiff stating that it verified that the information reported by Truist was accurate after a reinvestigation.

45. Equifax never contacted Plaintiff regarding his dispute.

46. Upon information and belief, Equifax did not conduct any investigation into Plaintiff's dispute other than to verify his account information.

47. Upon information and belief, Equifax did not reasonably investigate Plaintiff's dispute.

48. As a result of the Defendant's conduct, Plaintiff has been unable to obtain a mortgage loan on a property he was interested in.

49. Defendants Truist and Equifax have been reporting derogatory and inaccurate

5

Case 1:23-cv-00407-LCB-LPA    Document 1    Filed 05/17/23    Page 5 of 13

statements and information relating to Plaintiff and Plaintiff's credit history to third parties (hereafter the "inaccurate information").

50. The inaccurate information includes, but is not limited to, an account with Truist which was made delinquent not by Plaintiff's conduct but by that of the Defendant Truist.

51. The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness. The inaccurate information consists of accounts and/or tradelines that contain derogatory information.

52. The Defendant credit reporting agencies have been reporting the inaccurate information provided by Defendant Truist through the issuance of false and inaccurate credit information and consumer credit reports, and they have disseminated this inaccurate information to various persons and credit grantors, both known and unknown.

53. Notwithstanding Plaintiff's efforts, Defendant Truist has failed to conduct reasonable investigations of Plaintiff's disputes after being contacted by the relevant credit reporting agency concerning Plaintiff's dispute, has willfully continued to report such inaccurate information to various credit reporting agencies, has failed to mark the above account as disputed, and has continued to collect monies from the Plaintiff regarding the inaccurate information by the aforementioned conduct.

54. Despite Plaintiff's exhaustive efforts to date, Defendants Equifax and Truist have nonetheless deliberately, willfully, intentionally, recklessly, negligently, and repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA, have failed to remove the inaccurate information, have failed to report on the results of their reinvestigations to all credit reporting agencies, have failed to note the disputed status of the inaccurate information, and have continued to report the derogatory inaccurate information about the Plaintiff.

55. Plaintiff's credit reports and file have been obtained from credit reporting agencies and have been reviewed many times by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving many different credit opportunities, known and unknown.

56. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of lost credit opportunities, harm to his credit reputation and credit score, and emotional distress.

57. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment and under the direct supervision and control of the Defendants herein.

58. At all times pertinent hereto, the conduct of Defendants, as well as that of their agents, servants, and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

### a. <u>Truist</u>
### COUNT I – VIOLATIONS OF THE FCRA

59. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

60. At all times pertinent hereto, Defendant Truist is a "person" as that term is defined by 15 U.S.C. § 1681a(b).

61. Defendant Truist violated sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

62. Defendant Truist's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages, and harm to the Plaintiff that are outlined more fully above, and as a result, Defendant Truist is liable to compensate Plaintiff for the full amount of statutory, actual, and punitive damages, along with attorneys' fees and costs, as well as such other relief, permitted by law.

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit reports; and

(g) Such other relief as the Court deems equitable, just, and proper.

### b. Equifax

### COUNT II - FAILURE TO ASSURE ACCURACY

63. Plaintiff incorporates all of the preceding paragraphs by reference.

64. Defendant Equifax failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files maintained and published concerning Plaintiff, in violation of 15 U.S.C. § 1681e(b).

65. Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

66. Plaintiff was harmed by Defendant's conduct, action, and inaction.

8

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit score; and

67. (g) Such other relief as the Court deems equitable, just, and proper.

## COUNT III - REPORTING INFORMATION WHICH DEFENDANTS CANNOT VERIFY

68. Plaintiff incorporates all of the preceding paragraphs by reference.

69. Defendant Equifax failed to maintain "reasonable procedures" designed to prevent the reporting of incorrect information, in violation of 15 U.S.C. § 1681i(a)(5)(C).

70. Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

71. Plaintiff was harmed by Defendant's conduct, action, and inaction.

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

€ Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit report

and score; and

(g) Such other relief as the Court deems equitable, just, and proper.

## COUNT VI – VIOLATIONS OF THE NORTH CAROLINA CONSUMER PROTECTION ACT NCGS CHAPTER 75 AS TO TRUIST BANK

72. Plaintiff incorporates all of the preceding paragraphs by reference.

73. Defendant Truist Bank informed the Plaintiff that if he did not sign a new agreement, it would continue to falsely report on his credit that he owed more than $5,000 and was several months late on his loan obligation.

74. Plaintiff refused to sign the agreement, and the Defendant, true to its threat, continued to report the incorrect information on Plaintiff's credit reports.

75. It is an unfair and deceptive act in violation of NCGS 75-54 to try to force Plaintiff to sign a new contract in order to fix his credit when the original cause of the delinquency was the fault of the Defendant Truist. This act violated NCGS 75-54 (3).

76. It is an unfair and deceptive act in violation of NCGS 75-54 to charge Plaintiff a late for a loan that was not actually delinquent but was listed as such as a result of the Defendant's negligence. This act violated NCGS 75-54 (3).

77. It is an unfair deceptive act in violation of NCGS 75-54 to misrepresent the amount owed on Plaintiff's bills and statements as being more than $5,000 delinquent when the delinquency was the fault of the Defendant Truist Bank. This act violated NCGS 75-54 (4).

78. Further, Plaintiff's counsel sent a certified letter to Truist bank on January 10, 2023, asking Truist to direct all communications to the Plaintiff's counsel.

79. Truist then placed numerous phone calls to the Plaintiff despite this request in violation of NCGS 75-55(4).

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of Chapter 75;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit report and score; and

(g) Such other relief as the Court deems equitable, just, and proper.

## COUNT VII – BREACH OF CONTRACT AND THE COVENANT OF GOOD FAITH AND FAIR DEALING AS TO TRUIST BANK

80. Plaintiff incorporates all of the preceding paragraphs by reference.

81. Plaintiff and Defendant Truist Bank had a contract for the financing of Plaintiff's Toyota 4 Runner.

82. Defendant Truist Bank breached its contract when it improperly reopened the account and considered it to be over $5,000 delinquent despite the delinquency being the fault of Defendant.

83. Defendant breached the contract when it refused to accept Plaintiffs payments.

84. Defendant further breached its contract and the covenant of good faith and fair dealing when it began charging Plaintiff for late fees on a delinquency balance caused by the Defendant's conduct.

85. Defendant breached the covenant of good faith and fair dealing when it threatened to ruin Plaintiff's credit if Plaintiff did not sign a new contract.

86. Defendant further breached the covenant of good faith and fair dealing when it followed through on its threat to harm Plaintiff's credit because Plaintiff refused to sign a new

agreement.

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit report and score; and

(g) Such other relief as the Court deems equitable, just, and proper.

## JURY TRIAL DEMAND

87. Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

(a) Actual damages;

Statutory damage
(b) s;

Punitive damage
(c) s;

(d) Costs and reasonable attor'ey's fees pursuant to 15 U.S.C. §§ 1681n, 1681o, and N.C. Gen. Stat. § 75-16.1; and

(e) Such other and further relief as may be necessary, just, and proper.

Respectfully Submitted,

**Plaintiff,**

12

**Eric Keller**
**By Counsel**

**/s/ Benjamin M. Sheridan**
Benjamin M. Sheridan (# 52734)
Jed R. Nolan (# 56899)
*Counsel for Plaintiff*
Klein & Sheridan, LC PC

Mailing Address:
964 High House Rd. PMB 2039
Cary, NC  27513

Physical Office:
2500 Regency Parkway
Cary, NC  27518

ben@kleinsheridan.com
jed@kleinsheridan.com
phone: (919) 899-9533
fax: (304) 562-7115